STATE OF NEBRASKA, APPELLEE, V.
DANIEL G. CEBUHAR, APPELLANT.
567 N.W.2d 129

Filed July 3, 1997.   No. S-96-901.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

A jury found appellant, Daniel G. Cebuhar, guilty of third degree assault on a peace officer (Neb. Rev. Stat. § 28-931 (Reissue 1995)), first degree criminal trespass (Neb. Rev. Stat. § 28-520 (Reissue 1995)), and third degree assault (Neb. Rev. Stat. § 28-310 (Reissue 1995)). Cebuhar appeals, contending the district court erred, inter alia, in failing to instruct the jury that a defendant must know that his victim is a peace officer in order to be found guilty of third degree assault on a peace officer. Cebuhar also asserts the district court erred when it allowed the State to endorse witnesses after the jury had been empaneled. We affirm Cebuhar's conviction of third degree assault on a peace officer, concluding that knowledge of a victim's status as a peace officer is not an element of § 28-931. However, we reverse Cebuhar's conviction of third degree assault because the jury was erroneously instructed.

## FACTS

Shortly after midnight on February 10, 1996, Cebuhar, intoxicated and disoriented, forcibly entered the apartment of Mark Specht looking for liquor. At one point during his pursuit, Cebuhar approached Specht and pushed him in the chest with both hands. Specht eventually persuaded Cebuhar to leave the apartment, only to have him return a few minutes later with a friend. In his attempt to once again placate Cebuhar, Specht offered him whatever was in the apartment. After searching the kitchen, Cebuhar discovered a case of beer, opened a bottle for himself as did his friend, and proceeded to Specht's balcony. Specht testified that while he was on the balcony with Cebuhar and his friend, he was concerned about being struck on the head with a beer bottle.

During this activity, Specht's girl friend called the police. Lincoln police officer Bryon D. Pachunka answered the call at approximately 12:30 a.m. Upon Pachunka's arrival, Specht showed Pachunka the damage Cebuhar did to the screen and metal doors of the apartment. Concluding he had probable cause to arrest Cebuhar for vandalism, Pachunka subdued Cebuhar and placed him under arrest.

Pachunka placed Cebuhar in the back seat of his squad car and proceeded to take him to the jail. While the squad car was

stopped at a traffic light, Cebuhar began striking his head against the Plexiglas divider separating him from Pachunka. Concerned for Cebuhar's safety, Pachunka pulled the car over and determined that Cebuhar would have to be restrained. Officer Brian Tankesley was following Pachunka in his squad car and pulled over to assist. An Officer Amen arrived shortly thereafter with leg restraints.

Prior to the officers' attempts to apply the leg restraints, Pachunka crawled into the back seat of his squad car, which allowed him to straddle Cebuhar around his waist. At this point, Cebuhar was lying on his side facing toward the front seat of the squad car and Pachunka was facing the rear passenger-side window. According to Pachunka, Cebuhar looked at Tankesley and said something to the effect of "Who is that sergeant over there?" to which Amen responded that Tankesley was not a sergeant. Cebuhar responded, "I am talking about that mother . . . over there." After this exchange, Tankesley and Amen attempted to apply the leg restraints. During this attempt, Cebuhar kicked Tankesley in the face. Approximately 3 hours later, Tankesley went to the hospital, where he received x rays and was instructed to take Tylenol for his pain and to place ice on his face to prevent swelling.

An information charged Cebuhar with burglary, third degree assault on a peace officer, first degree criminal trespass, and third degree assault. At trial, Cebuhar testified that he was at Specht's apartment on February 10, 1996, but that he remembered only portions of what happened because he was intoxicated. Cebuhar stated that he also had some memory of striking his head against the Plexiglas divider in Pachunka's car but that he did not recognize Tankesley or remember kicking him. Tankesley testified that he could not see the upper half of Cebuhar's body when he was kicked. Pursuant to a jury verdict, the district court adjudged Cebuhar not guilty on the burglary count but guilty on the remaining three counts. Cebuhar was sentenced to concurrent terms of 2 years' probation on each count and now appeals his convictions for third degree assault on a peace officer on Tankesley and third degree assault on Specht. We granted the State's petition to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Restated, Cebuhar asserts the district court erred in the following respects: (1) allowing the State to call witnesses whose names were not endorsed on the information, (2) allowing the State to endorse the names of witnesses on the information after the trial began, (3) refusing to instruct the jury that an element of third degree assault on a peace officer is knowledge that the person assaulted was a peace officer, (4) instructing the jury that it could find Cebuhar guilty of assault if he recklessly threatened Specht, and (5) failing to instruct the jury that third degree assault is a lesser-included offense of third degree assault on a peace officer.

## STANDARD OF REVIEW

Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. See, *State v. Nissen, ante* p. 51, 560 N.W.2d 157 (1997); *State v. Trevino*, 251 Neb. 344, 556 N.W.2d 638 (1996).

## ANALYSIS

### ENDORSED WITNESSES REQUIREMENT

Cebuhar's first two assigned errors focus on the State's failure to endorse the names of its witnesses on the information. Prior to the receipt of evidence, Cebuhar objected to this failure and requested that the State not be allowed to call any witness. The district court overruled the objection and granted the State's motion for leave to endorse the names of the witnesses on the information. Cebuhar contends the court erred in both instances.

Neb. Rev. Stat. § 29-1602 (Reissue 1995) provides that a prosecutor, when filing an information, shall

> endorse thereon the names of the witnesses known to him at the time of filing the same; and at such time thereafter, as the court or a judge thereof in vacation, in its or his discretion, may prescribe, he shall endorse thereon the names of such other witnesses as shall then be known to him.

A trial court may allow witnesses to be endorsed after an information is filed when doing so does not prejudice the

defendant in the preparation of his defense. *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990). See, also, *State v. Mecum*, 225 Neb. 293, 404 N.W.2d 431 (1987). The purpose of § 29-1602 is to notify the defendant as to witnesses who may testify against him and give him an opportunity to investigate them. *State v. Boppre, supra.* In order to obtain a reversal on the grounds of an additional endorsement of witnesses, the defendant must have requested a continuance at trial and must demonstrate prejudice. *State v. Brandon*, 240 Neb. 232, 481 N.W.2d 207 (1992); *State v. Boppre, supra.*

While we do not condone the State's carelessness in failing to endorse its witnesses' names on the information, we note that although Cebuhar did request leave to take the depositions of the endorsed witnesses, he did not make a motion for a continuance. Moreover, we fail to see how Cebuhar was prejudiced by the court's granting the State's motion to endorse witnesses. The State called only three witnesses to testify at trial: Specht (victim), Pachunka (arresting officer), and Tankesley (victim). Cebuhar does not argue, nor can it be seriously entertained, that he was surprised by the fact that these three persons would testify against him. In fact, we have expressly rejected the contention that failure to endorse the name of an arresting officer prejudices a defendant, noting that the "defendant would have reason to know that such police officer might be called as a witness." *McCartney v. State*, 129 Neb. 716, 717, 262 N.W. 679, 680 (1935). We conclude that the same reasoning applies to the failure to endorse the names of the alleged victims in that a defendant would have reason to know that the alleged victims will be called to testify at trial. The main thrust of § 29-1602 is to notify the defendant of the witnesses that will testify against him. *State v. Boppre, supra.* Under the facts of this case, Cebuhar was clearly aware that the arresting officer and two alleged victims might be called to testify against him. That being the case, the first two assigned errors are without merit.

### KNOWLEDGE THAT VICTIM IS PEACE OFFICER

Cebuhar's proposed jury instruction No. 4 would have required that the jury find that "the defendant knew Brian Tankesley was a peace officer engaged in the performance of

his official duties." The district court rejected this instruction and gave instruction No. 4, which provided in part:

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime [of third degree assault of a peace officer] are:

1. That the defendant caused bodily injury to Brian Tankesley, a peace officer.

2. That the defendant did so intentionally, knowingly or recklessly.

3. That the victim, Brian Tankesley, was then a peace officer who was engaged in the performance of his official duties.

4. That the defendant did so on or about February 10, 1996 in Lancaster County, Nebraska.

Determining whether Cebuhar's proposed jury instruction No. 4 is a correct statement of law requires us to answer a question of first impression: Must a defendant know that the person he or she assaults is a peace officer in order to be convicted of third degree assault on a peace officer?

The answer to this question involves a statutory interpretation. Although penal statutes are strictly construed, they are given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. Ryan*, 249 Neb. 218, 543 N.W.2d 128 (1996).

The crime of third degree assault on a peace officer is defined by § 28-931: "A person commits the offense of assault on an officer in the third degree if he or she intentionally, knowingly, or recklessly causes bodily injury to a peace officer . . . while such officer . . . is engaged in the performance of his or her official duties."

According to Cebuhar, § 28-931 requires the State to prove that the defendant knew the victim was a peace officer at the time of the assault. In support of his contention, Cebuhar argues that the purpose of making an assault on a peace officer a felony is to deter persons from in fact assaulting a peace officer. Cebuhar also asserts that because an assault on a peace officer constitutes a felony, a heightened knowledge requirement is

necessary. The State contends that a plain and ordinary reading of the statute indicates that knowledge of the victim's status is not an element of the crime.

This court has not previously determined whether the State must prove that a defendant convicted of assaulting a peace officer must know the victim is a peace officer. See *State v. LaPlante*, 183 Neb. 803, 164 N.W.2d 448 (1969) (recognizing but not deciding the issue). However, we are directed to the decisions of various jurisdictions that have held that knowledge of the victim's status as an officer is a required element. See, *State v. Allen*, 67 Wash. App. 824, 840 P.2d 905 (1992); *Reese v. State*, 106 N.M. 498, 745 P.2d 1146 (1987); *State v. Moll*, 206 N.J. Super. 257, 502 A.2d 87 (1986); *State v. Rowland*, 54 N.C. App. 458, 283 S.E.2d 543 (1981); *State v. Copher*, 581 S.W.2d 59 (Mo. App. 1979); *Dotson v. State*, 358 So. 2d 1321 (Miss. 1978). Conversely, courts in other states with statutes similar to § 28-931 have held that a defendant need not know his or her victim is an officer. See, *Com. v. Flemings*, 539 Pa. 404, 652 A.2d 1282 (1995); *State v. Feyereisen*, 343 N.W.2d 384 (S.D. 1984). See, also, *United States v. Feola*, 420 U.S. 671, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975) (holding knowledge not an element of statute making assault on federal officer illegal).

While offering insight, the determinations of other jurisdictions are not determinative in our inquiry, for the resolution of the question before us lies within the plain wording of § 28-931 and our prior decisions. In *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993), we examined the required mens rea for first and third degree assault. We noted that first degree assault occurs when a person " 'intentionally or knowingly causes serious bodily injury to another person,' " *id.* at 961, 503 N.W.2d at 564 (see Neb. Rev. Stat. § 28-308(1) (Reissue 1995)), whereas third degree assault occurs when a person " '[i]ntentionally, knowingly, or recklessly causes bodily injury to another person . . . ,' " *id.* at 962, 503 N.W.2d at 564 (see § 28-310(1)). Recognizing the similarities of these crimes, we noted that all assaults are general intent crimes. As such, we held that the required intent for these offenses "relates to the assault, not to the injury which results." *Id.* at 963, 503 N.W.2d at 565. Therefore, a defendant may assault a person, intending to cause

bodily injury, but nevertheless be charged with the felony of first degree assault if serious bodily injury is actually inflicted.

Similarly, in *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987), we held that the required intent for second degree assault concerns only the defendant's choice of action involving a dangerous instrument and not the resulting injury. In reaching this conclusion, we wrote:

> When one deliberately does an act which proximately causes and directly produces a result which the criminal law is designed to prevent, the actor is legally and criminally responsible for all the natural or necessary consequences of the unlawful act, although a particular result of the act was not intended or desired.

*Id.* at 139, 416 N.W.2d at 237.

The wording of § 28-931 is remarkably similar to that of the definitions of first and third degree assault as interpreted in *Williams*. In keeping with the reasoning and analysis put forth in both *Williams* and *Hoffman*, we conclude that assault on a peace officer is also a general intent crime. As such, the required level of mens rea set forth in the statute applies only to the course of action that brings about the actual assault. Although the State must necessarily prove that the victim assaulted was, in fact, a peace officer engaged in the performance of his or her official duties, it is simply not incumbent upon the State to prove that the defendant was so aware under the circumstances of this case.

This is not to say that in a situation in which an officer is the aggressor and his or her identity is not known to the defendant (e.g., undercover officer), that the defendant may not use such force as may be necessary to protect himself from the impending assault. Courts in other jurisdictions have held that under such circumstances where a defendant's lack of intent is based upon an honest mistake of fact with respect to an officer's official status, the defendant ought to be able to assert this honest mistake of fact to the jury as evidence that no unlawful conduct was intended. See, e.g., *United States v. Hillsman*, 522 F.2d 454 (7th Cir. 1975), *cert. denied* 423 U.S. 1035, 96 S. Ct. 570, 46 L. Ed. 2d 410; *Dotson v. State*, 358 So. 2d 1321 (Miss. 1978). In the instant case, however, there is no claim or evidence of mis-

taken belief, and the unlawful intent of Cebuhar is clear. As such, lack of knowledge as to the officer's status does not negate his intent to commit the assault.

We are not persuaded by Cebuhar's contention that because third degree assault on a peace officer is a felony, a heightened knowledge requirement is mandated. As noted in *Williams*, a defendant may be convicted of first degree assault, a felony, even though he or she did not intend to bring about the particular result. Furthermore, it is not within the province of this court to read a meaning into a statute that is not warranted by the language employed therein. See *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996). Had the Legislature intended to make knowledge of the victim's identity a required element, it could have done so. See, e.g., Ariz. Rev. Stat. Ann. § 13-1204A.5. (West 1989); Colo. Rev. Stat. Ann. § 18-3-203(1)(c) (West 1990); 720 Ill. Comp. Stat. Ann. 5/12-4(b)(6) (West 1993). We therefore conclude that the district court did not err in refusing Cebuhar's proposed instruction.

## LESSER-INCLUDED OFFENSE INSTRUCTION

Cebuhar's proposed jury instruction No. 4 also provided that the jury could find Cebuhar guilty of third degree assault on a peace officer or guilty of the lesser-included offense of third degree assault. The court refused this instruction, and the jury was instructed only on the elements of third degree assault on a peace officer.

A similar argument was addressed by this court in *State v. LaPlante*, 183 Neb. 803, 164 N.W.2d 448 (1969). There, the defendant was charged with unlawfully and feloniously assaulting a peace officer engaged in the performance of his duties, in violation of Neb. Rev. Stat. § 28-729.01 (Supp. 1967). On appeal, the defendant asserted that the lower court erred in not instructing the jury on simple assault as a lesser-included offense. This court concluded that it was beyond dispute that the victim was an officer engaged in official duties at the time of assault. As such, the defendant was either guilty or not guilty of the crime charged, thereby making a lesser-included offense instruction inappropriate.

In the instant case, the undisputed evidence offered at trial was that Tankesley was an officer engaged in the performance

of official duties at the time he was kicked by Cebuhar. Notably, Cebuhar offered no conflicting testimony about this fact at trial. Assuming that third degree assault may, under certain circumstances, be a lesser-included offense of third degree assault on a peace officer, we have held that it is not prejudicial error to not instruct upon a lesser-included offense when the evidence entirely fails to show an offense of a lesser degree than that charged in the information. *State v. Faatz*, 234 Neb. 796, 452 N.W.2d 751 (1990). Because it was clear that Tankesley was a peace officer engaged in official duties at the time of his injury, the district court was correct in refusing to instruct the jury on third degree assault.

THIRD DEGREE ASSAULT INSTRUCTION

The final assignment of error before us concerns Cebuhar's conviction for third degree assault of Specht in violation of § 28-310. Concerning this charge, the court, over Cebuhar's objection, tendered instruction No. 4, which provided that the State must prove that "the defendant did threaten Mark Specht in a menacing manner" and that "the defendant did so intentionally, knowingly or recklessly."

Section 28-310 provides in part: "(1) A person commits the offense of assault in the third degree if he: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or (b) Threatens another in a menacing manner."

The record indicates the State was proceeding against Cebuhar pursuant to subsection (b). We have held that a violation of this subsection requires an intentional act. See *In re Interest of Siebert*, 223 Neb. 454, 390 N.W.2d 522 (1986). As such, the State concedes the district court erred in instructing the jury that it could find Cebuhar guilty if he intentionally, knowingly, or recklessly threatened Specht in a menacing manner.

Nevertheless, the State asserts the erroneous instruction was harmless. In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). According to the State, the evidence adduced at trial

made it clear that Cebuhar intended to threaten Specht in a menacing manner. While this argument has some appeal, we simply cannot conclude that the jury would necessarily have found Cebuhar guilty of third degree assault based on the evidence offered had it been properly instructed on the level of culpability required. Based on the fact that the jury could have reached its guilty verdict in reliance on the lesser culpability standards of knowingly or recklessly, we determine that Cebuhar was prejudiced by the instructions given, and his conviction of third degree assault must therefore be reversed, and remanded.

## CONCLUSION

In accordance with the preceding analysis, we affirm Cebuhar's conviction of third degree assault on a peace officer, but reverse his conviction of third degree assault and remand that matter for a new trial.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.