IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. JIMENEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SOPHIA I. JIMENEZ, APPELLANT.

Filed November 20, 2018.    No. A-17-1018.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Stacy C. Bach, of Nossaman Petitt Law Firm, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

MOORE, Chief Judge, and RIEDMANN, and WELCH, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Sophia I. Jimenez appeals her conviction and sentence in the district court for Scotts Bluff County for negligent child abuse. Jimenez claims on appeal that she received ineffective assistance of trial counsel and that the court imposed an excessive sentence. Jimenez' claim of ineffective assistance of counsel is affirmatively refuted by the record, and we affirm her conviction and sentence.

### BACKGROUND

The allegations in this case arise out of an incident in April 2017 in which Jimenez left her son in the care of her mother, who is "schizophrenic" and "diagnosed as bipolar." Jimenez' mother, who had only recently begun taking medication for her conditions, threatened to kill the child, which led to the child abuse charges filed against Jimenez in this case.

On May 24, 2017, the State filed an information in the district court, charging Jimenez with committing child abuse, knowingly and intentionally, in violation of Neb. Rev. Stat. § 28-707(4) (Reissue 2016), a Class IIIA felony. Specifically, the State alleged that Jimenez feloniously, knowingly and intentionally caused or permitted a minor child, born in March 2006, to be placed in a situation that endangered the child's life or physical or mental health, cruelly confined or cruelly punished the child, or deprived the child of necessary food, clothing, shelter or care, contrary to Nebraska statutes.

A jury trial was held on August 3, 2017. At the start of trial, the State made a motion to endorse Dr. Gage Stermensky, a clinical psychologist, as a witness. Jimenez' attorney objected, arguing that the jury had already been selected and had not been made aware that Stermensky would be a witness. The prosecutor explained that the late endorsement of Stermensky was necessary because a previously endorsed witness, a nurse who had been identified as a witness who would be testifying regarding "symptomology of bipolar and schizophrenia," was out of the state and unable to testify. The prosecutor explained that "in essence, [Stermensky] is going to testify to the exact same thing that was disclosed that [the nurse] would." The prosecutor argued that the defense would not be prejudiced if Stermensky testified because "they knew the State intended to bring in a witness, an expert witness, to testify as to symptomology of bipolar and schizophrenia." The prosecutor also noted that despite being aware that someone would be testifying regarding symptoms associated with the grandmother's mental health diagnoses, the defense had not sought to investigate through depositions or other means. In response, Jimenez' attorney again argued that the jury had already been selected and that it was unknown whether any of the jurors knew Stermensky.

At that point, the district court had the jurors brought into the courtroom and inquired whether any of them knew Stermensky. None of the jurors responded affirmatively to the court's inquiry, and the court allowed the endorsement of Stermensky as a witness. Stermensky testified generally as to the symptomology of bipolar disorder and schizophrenia, explaining that he had never treated Jimenez' mother, but that, based on the material he reviewed which included police reports and "officers' videos," the grandmother's actions on the day in question were consistent with someone suffering from schizophrenia or schizoaffective disorder. He also explained that medications used to treat schizophrenia can take some time to become effective with some psychotropic medications taking anywhere from 3 to 6 weeks for maximum effectiveness.

In addition to Stermensky, the State presented testimony from two police officers who investigated the incident, a school psychologist at the child's elementary school, an initial assessment caseworker with the Nebraska Department of Health and Human Services (Department), the grandmother, and two other relatives of the child. The evidence generally showed that Jimenez and her 11-year-old son had been staying with the grandmother since shortly before Easter 2017, that on the day in question, Jimenez left her son alone in the grandmother's care, that the grandmother "was schizophrenic" and had been "diagnosed as bipolar," and that she had only recently begun taking medication for her diagnoses. At trial, the grandmother agreed that she had been committed to a hospital for her mental health issues on two occasions the fall before the incident, and she testified that Jimenez knew about her mental health issues at that time. The grandmother felt that she was acting "differently than normal" prior to the incident, but she testified

that she had not specifically told Jimenez that she was hearing voices. On the day of the incident, the grandmother felt that the child was possessed by the grandmother's sister, but at trial she denied having tried to "exorcise [the sister] out of him." She agreed that she had been "talking to God" at the time of the incident, but she did not recall also "talking to Queen Elizabeth." On the day in question, the child texted relatives that his grandmother was trying to kill him, after which the police were called to the apartment building where the grandmother resided.

When the police arrived at the location, they made contact with the individual who called the 911 emergency dispatch service. Shortly thereafter, the child ran out of the apartment building, said that his grandmother was trying to kill him, told the police officers that the grandmother had two knives in her purse, and provided police with the apartment number. The child appeared scared and "in a hurry to get out of there." When the police made contact with the grandmother, she was hostile and uncooperative, was "mentioning weird things" and not "making sense," and did not appear to be in "an appropriate emotional state" to care for a child. Police located two "average sharp kitchen knives" in the grandmother's purse. Jimenez was not present in the apartment, but police asked someone at the scene to contact her. The grandmother was taken into custody on an active warrant and transported to jail; the child was transported to the police station, where police contacted a Department caseworker.

One of the individuals present at the apartment building located Jimenez and took her to the police department, and Jimenez' statements to police indicated that she knew the grandmother was bipolar and schizophrenic, that the grandmother took medication for these conditions, that the grandmother had recently been in a "good mood," and that she believed the grandmother had ceased taking her medication that same day. The child was released into Jimenez' custody after she spoke with the police, but he has since been made a ward of the State and was living with another relative at the time of trial.

Jimenez testified in her own behalf. She indicated that she and her son had been living with the grandmother for about 6 days before the incident and that she did not have any concerns about the grandmother's mental health at that time. Jimenez was aware of the grandmother's diagnoses, but she testified that she had never "done any research" on the conditions and that prior to hearing Stermensky's testimony at trial, she had been unaware of the risks associated with someone with schizophrenia being unmedicated. She testified that she thought that if the grandmother was on her medication again, she "would be okay." According to Jimenez, prior to the incident, the grandmother was "on her meds," "back to her old self," and acting like she was "[Jimenez'] old mom again." Jimenez testified that when the grandmother is not on medication, she is "a whole different person." Jimenez testified that the last time she saw the grandmother in that condition was in October 2016 when Jimenez "called the cops on her," which she knew led to the grandmother's involuntary commitment on a mental health hold.

The jury convicted Jimenez of the lesser-included charge of negligent child abuse, a misdemeanor, which verdict was accepted by the district court. The court subsequently sentenced Jimenez to 120 days in jail with credit for 32 days of time served.

ASSIGNMENTS OF ERROR

Jimenez asserts that (1) she received ineffective assistance of trial counsel and (2) the district court imposed an excessive sentence.

STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018). An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *Id.*

ANALYSIS

*Ineffective Assistance of Counsel.*

Jimenez asserts that she received ineffective assistance of trial counsel. She is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Avina-Murillo, supra*. Otherwise, the issue will be procedurally barred. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018).

Jimenez specifically asserts that her right to effective assistance of trial counsel was violated when her attorney failed to "properly renew" her objection to the testimony of Stermensky at the start of his trial testimony. Brief for appellant at 8. She argues further that the issue "becomes whether or not [Jimenez] was prejudice[d] in her jury selection as the witness [Stermensky] was not known to the jurors at the commencement of the case." *Id.* Her claim is affirmatively refuted by the record.

As noted above, the State sought to endorse Stermensky as a witness at the start of trial due to the absence of a witness previously identified as someone who would be providing testimony about the symptomology of schizophrenia and bipolar disorder. Trial was held on August 3, 2017, and the record indicates that voir dire of the jury had taken place on July 31. Jimenez' attorney objected to the motion to endorse Stermensky as a witness on August 3 because the jury had not been questioned on July 31 about whether they knew Stermensky. The court called the jurors into the courtroom, asked whether any of them knew Stermensky and whether any of them knew of any reason why they could not "consider his testimony the same as any other witness" if he were to testify. Since none of the jurors indicated that they knew Stermensky or that they would not be able to properly consider his testimony, the court endorsed Stermensky as a witness.

Jimenez does not cite any case law in support of her assertion that her attorney was required to renew her objection to Stermensky's testimony, and our research does not reveal any such requirement. Jimenez does not allege that any of the jurors who were selected and deliberated on her case were biased, and the record affirmatively refutes any suggestion that Jimenez was prejudiced "in her jury selection" by the court's endorsement of Stermensky as a witness. As noted by Jimenez in her brief on appeal, her trial counsel did properly object to the State's motion for late endorsement. Any further objection at trial on the basis that the jury was not informed of the witness' identity would have also been overruled given the court's questioning of the jury.

With respect to informations filed in criminal cases, Neb. Rev. Stat. § 29-1602 (Supp. 2017) provides, in part:

> The prosecuting attorney shall subscribe his or her name thereto and endorse thereon the names of the witnesses known to him or her at the time of filing. After the information has been filed, the prosecuting attorney shall endorse on the information the names of such

other witnesses as shall then be known to him or her as the court in its discretion may prescribe . . . .

The purpose of § 29-1602 is to notify the defendant as to witnesses who may testify against the defendant and give the defendant an opportunity to investigate them. *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006). A trial court may allow witnesses to be endorsed after an information is filed when doing so does not prejudice the defendant in the preparation of his or her defense. *Id.* In order to obtain a reversal on the grounds of an additional endorsement of witnesses, the defendant must have requested a continuance at trial and must demonstrate prejudice. *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997).

Jimenez does not argue that she was prejudiced in the preparation of her defense by the late endorsement of Stermensky or that she was unaware that the State had previously endorsed a witness who would be testifying as to the "symptomology of bipolar and schizophrenia." She clearly could have asked for a continuance if she felt that her preparation was prejudiced by the late endorsement, but she did not do so and does not assert any error on appeal in that regard.

Jimenez' arguments with respect to her claim of ineffective assistance of trial counsel are without merit. See *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018) (claim of ineffective assistance may be resolved on direct appeal when record is sufficient to affirmatively prove or rebut merits of claim).

*Excessive Sentence.*

Jimenez asserts that the district court imposed an excessive sentence. Jimenez was convicted of negligent child abuse and sentenced to 120 days in jail. Negligent child abuse is a Class I misdemeanor punishable by up to 1 year in jail, a $1,000 fine, or both. § 28-707(3); Neb. Rev. Stat. § 28-106 (Reissue 2016). The sentence imposed by the court for Jimenez' conviction was within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Leahy, supra.*

Jimenez acknowledges that the sentence imposed was within the statutory limits, but she argues that the sentence was "excessive under the circumstances" because the court "failed to address the parenting needs of [Jimenez]." Brief for appellant at 9. Specifically, she argues that

the court failed to take into account that she is a single parent with two children. We note that her testimony at trial indicates that in addition to the child referenced in this case, she also has an older child. Although the district court ordered a presentence investigation report (PSR), Jimenez failed to show up for her appointment with the probation officer, and the information included in the PSR is limited. She was 31 years old at the time the PSR was prepared. Jimenez' criminal history includes three convictions for possession of drug paraphernalia; two convictions for minor in possession; two convictions for possession of marijuana less than 1 ounce; convictions for unlawful/fictitious display of license plate, disorderly conduct, driving under the influence first offense, driving under suspension, and possession/consumption of an open alcohol container; as well some traffic violations. She declined the opportunity to make a statement at the sentencing hearing, but her attorney did inform the court that Jimenez is a single parent of two children. A review of the record from the sentencing hearing shows that the district court considered the relevant factors. The court observed that the offense in this case caused harm, appearing to have caused "significant fright" to the child, and it observed that Jimenez' attitude was "largely unknown," given her failure to attend the probation appointment. The court did not abuse its discretion in considering the relevant factors and did not impose an excessive sentence. Accordingly, we affirm Jimenez' sentence following her conviction for negligent child abuse.

## CONCLUSION

Jimenez' claim of ineffective assistance of trial counsel is without merit. The district court considered the relevant sentencing factors and did not impose an excessive sentence.

AFFIRMED.