IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DEERING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TRENT DEERING, APPELLANT.

Filed May 28, 2024.    No. A-23-507.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge.
Affirmed.

Justin B. Kalemkiarian, of Liberty Law Group, for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Trent Deering appeals from his convictions for strangulation and third degree domestic assault in the district court for Saunders County. He raises issue with the trial court allowing the State to endorse an additional witness, and claims that his trial counsel provided ineffective assistance. Based on the reasons that follow, we affirm.

## II. BACKGROUND

In January 2023, Deering was charged with strangulation, a Class IIIA felony; third degree domestic assault, a Class I misdemeanor; and negligent child abuse, a Class I misdemeanor. Trial was set for May 11. Three days before trial, the State filed a motion to endorse an additional witness--Amye Dusatko, the nurse who examined the victim, M.R., after her altercation with Deering. Along with the motion to endorse, the State filed a certificate of compliance with

- 1 -

discovery, indicating that it emailed defense counsel two pages of photos and two pages of a supplemental report. Deering filed a written objection to the motion to endorse Dusatko. The court granted the State's motion to endorse.

On the first day of trial, after the jury was empaneled and opening statements had been given by both parties, Deering renewed his objection to the State calling Dusatko as a witness, which the court overruled.

The evidence at trial showed that on November 22, 2022, there was a physical altercation between Deering and M.R. at their residence. At the time, the two were in an intimate relationship, had been living together for almost a year, and had a child together who was about 6 weeks old.

M.R. testified that on the morning of the altercation she saw messages and photos on Deering's phone that he had sent to other women. After Deering went to work, M.R. sent him a text indicating that she wanted to end their relationship. About 20 minutes after she sent the message, Deering returned home, and they got into an argument that turned physical. According to M.R., Deering came into the bedroom where she was sitting on the bed with their infant son in her arms. Deering started yelling at her, saying, "You can't do this to me," and "You can't break up our family." Deering then pushed her over while she was on the bed with their son. M.R. subsequently laid their son on the bed and walked out of the bedroom and into the living room, with Deering following her and continuing to yell at her. Deering then pushed her to the floor, where she ended up on her back and Deering got on top of her, keeping her on the floor. He put both of his hands on her neck, with his fingers along her jaw. Deering put pressure on her neck for 8 to 10 seconds, such that she could not breathe or speak. In response, she "nudge[d] him on the arm" to indicate to Deering she could not breathe and to get him to stop. When he stopped putting pressure on her neck, he stood up and backed away, and she was able to get up and then sat down on the couch. Deering came at her again and put his thumb on her neck and pressed hard for the same length of time as he did the first time. After putting pressure on M.R.'s neck the second time, Deering told her she needed to make him believe she was not going to leave. M.R. testified that she was "scared out of [her] mind," and she just kept saying "okay" and told him to leave and go back to work. Deering eventually left the residence.

M.R. testified that she believed Deering took her cell phone and her purse when he left, as she could not find either one. She went outside to see if they were in her vehicle and noticed that one of her tires was flat. She later discovered that the tire was flat because a stem valve had been taken out of her tire. Deering denied taking M.R.'s cell phone, but admitted he hid it from her by putting it under the bed mattress. Later that day, after Deering was arrested, she found her phone between the mattress and the bed frame.

M.R. testified she wanted to leave the house after the altercation because she had a feeling Deering would come back. As she was trying to figure out what to do since she had no phone or vehicle available to her, she remembered there was a phone in the house that she had bought for her son from another relationship. She found the phone, charged it, and then called 911. In the 911 call, she asked that the responding police officer meet her at the post office located a block away from her house because she did not want to stay at the house. Deputy Kyle Boyle arrived at the post office, and M.R. described the altercation to him. Boyle's conversation with M.R. was recorded on his body camera and entered into evidence. Boyle also took photos of M.R. at the post office that depicted redness on both sides of her neck. These photos were entered into evidence.

Other photos taken in the days following the incident were also admitted into evidence, depicting redness and bruising on M.R.'s neck. M.R. testified that while she and Boyle were still at the post office, Deering arrived, and he was arrested.

M.R. testified that in the evening on the day of the altercation, she went to a hospital for a medical examination. She was examined by Dusatko. Dusatko took photos of M.R., which showed red marks and bruising on M.R.'s neck where Deering's hands applied pressure. M.R. told Dusatko that Deering's actions caused her physical pain, and she also testified that it hurt to swallow for about 4 or 5 days after the incident.

Boyle testified that M.R. told him at the post office that Deering had placed his hands on her throat and pressed his thumbs into her neck. M.R. also told him she had difficulty breathing when Deering's hands were around her throat and that it hurt. Boyle testified that he observed that M.R. had injuries and took photos of the injuries.

Boyle also testified that after Deering was arrested, he admitted that he and M.R. got into a fight and he placed hands on her but stated that M.R. slapped him first. Deering indicated that after she slapped him, he put his hands on her hips. Deering did not admit to Boyle that he choked or strangled M.R., and he characterized the incident as a wrestling match.

Dusatko testified that she became a licensed registered nurse in 2014, and a sexual assault nurse examiner (SANE) in 2018. At the time of trial, she had performed 61 SANE examinations. She acknowledged that this case did not involve sexual assault but stated that SANE nurses do examinations for other assault cases as well. She described her role as a SANE nurse examiner, which included taking a history from each patient to help guide her physical examination.

Dusatko testified that in the present case, M.R. reported she had been the victim of strangulation. During Dusatko's examination of M.R., she took pictures of her injuries. She testified that M.R. told her she had difficulty breathing, or was unable to breathe, during the incident with Deering. Dusatko testified that based on her education and experience as an ER and SANE nurse, M.R.'s injuries were consistent with her report of pressure being applied to her neck or throat. Dusatko also testified that in her experience as a SANE nurse, it was not uncommon for victims of strangulation to have no visible injuries.

Deering testified in his own defense. He testified that after he arrived at work on November 22, 2022, he received a text from M.R. indicating that she was taking their son and leaving. He left work immediately, and when he got home, he and M.R. started arguing. Deering admitted that at some point the argument became physical. He claimed M.R. slapped him in the face when they were in the living room and somehow, they both ended up on the floor, with him straddling on top of her. Deering testified he held M.R. down by her shoulders, but did not put his hands around her throat, or do anything to restrict her airway. Deering could not explain why she had bruising on her neck.

The jury found Deering guilty of strangulation and third degree domestic assault, and not guilty of negligent child abuse. The court accepted the verdicts and subsequently sentenced Deering to 6 months in jail for each conviction, to be served concurrently, and 18 months' post-release supervision for the strangulation offense.

## III. ASSIGNMENTS OF ERROR

Deering assigns that the trial court erred by granting the State's motion to endorse Dusatko without holding a hearing and without giving him a meaningful opportunity to thoroughly investigate Dusatko and her claims, thereby violating his procedural due process rights. He further assigns that his trial counsel was ineffective by: (1) failing to request a continuance to allow him to investigate Dusatko's opinion, (2) failing to object to Dustako's testimony under Neb. Rev. Stat. § 27-702 (Reissue 2016) and/or request a *Daubert/Schafersman* hearing, and (3) failing to move to disqualify the jury panel and/or for a mistrial because jurors expressed negative opinions about his trial counsel during voir dire.

## IV. STANDARD OF REVIEW

Whether to permit the names of additional witnesses to be endorsed upon the information after the information has been filed is within the discretion of the trial court. *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. ENDORSEMENT OF ADDITIONAL WITNESS

Deering first assigns that the trial court erred by granting the State's motion to endorse Dusatko as a witness without holding a hearing and without giving him a meaningful opportunity to thoroughly investigate Dusatko and her claims, thereby violating his procedural due process rights.

Nebraska law requires a prosecuting attorney to endorse the names of known witnesses at the time the information is filed. *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). See, also, Neb. Rev. Stat. § 29-1602 (Cum. Supp. 2020). The purpose of this requirement is to give the defendant notice as to witnesses who may testify against him or her and give the defendant an opportunity to investigate them. *State v. Sandoval, supra*. However, a trial court may allow witnesses to be endorsed after an information is filed when doing so does not prejudice the defendant in the preparation of his or her defense. *State v. Molina, supra*. In order to obtain a reversal on the grounds of an additional endorsement of witnesses, the defendant must have requested a continuance at trial and must demonstrate prejudice. *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997).

Deering did not request a continuance after the court endorsed Dusatko. He objected to the endorsement, but never made a motion for a continuance either before trial began or during trial. Accordingly, Deering's first assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Deering assigns that his trial counsel was ineffective in several ways. We first set forth the legal framework for our analysis and then address each claim.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Miller, supra*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's action could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). To show that counsel's performance was deficient, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

### (a) Continuance

Deering's first ineffective assistance of counsel claim relates to his first assignment of error regarding the endorsement of Dusatko. He assigns that his trial counsel was ineffective in failing to request a continuance to allow him time to investigate Dusatko's opinion, depose her, and obtain his own expert. The State contends the record is insufficient to resolve this claim on direct appeal. We agree. It is not apparent from the record why defense counsel chose not to request a continuance to investigate Dusatko's opinion. Any discussions between Deering and his counsel are not part of the record before us and, therefore, it is impossible to know what they discussed, if anything, about asking for a continuance. We also do not know the thought process or trial strategy

of Deering's trial counsel regarding Dusatko's testimony. Because Deering's claim requires an evaluation of trial strategy and matters not in the record before us, the record is insufficient to address this ineffective assistance of counsel claim on direct appeal.

### (b) Dusatko's testimony

Deering next assigns that his trial counsel was ineffective by failing to object to Dusatko's testimony under § 27-702 and/or to request a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). An objection based on § 27-702 is an objection to the admission of expert opinion testimony. A *Daubert*/*Schafersman* hearing is requested by a party to challenge the admissibility of evidence and allows the trial court to act as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. See *State v. Edwards*, 278 Neb. 55, 767 N.W.2d 784 (2009).

Deering argues there was a lack of foundation for some statements made by Dusatko at trial, and trial counsel performed deficiently by failing to request that her testimony be excluded pursuant to § 27-702 or *Daubert*/*Schafersman*. The State again contends the record before us is insufficient to resolve this claim on direct appeal, and we agree. There is nothing in the record to indicate or explain why trial counsel made the decision not to make foundational objections to certain testimony or request a *Daubert*/*Schafersman* hearing. We do not know Deering's trial counsel's thought process or trial strategy regarding Dusatko's testimony. Similar to Deering's first ineffective assistance of counsel claim, this claim requires an evaluation of trial strategy and matters not in the record before us. Therefore, the record is insufficient to address this ineffective assistance of counsel claim on direct appeal.

### (c) Jury Pool

Deering next claims that his trial counsel was ineffective by failing to move to disqualify the entire jury pool or motion for mistrial because jurors expressed negative opinions about his trial counsel.

During voir dire, the district court asked the jury pool if anyone knew either attorney. Several of the prospective jurors indicated they knew defense counsel in some way. Deering takes issue with two of those prospective jurors. The first juror indicated that defense counsel had represented his ex-spouse in his divorce. The juror was asked if he would hold any prejudice against defense counsel and he indicated he would. The second juror stated that defense counsel had previously represented him in a driving under the influence charge. The juror indicated that he would "probably not" hire him again. The court then asked him if he would be inclined one way or another to believe or disbelieve arguments made by defense counsel in the present case, and the juror stated, "I'd be fair." Both of these prospective jurors were struck for cause and did not serve on the jury at trial.

Deering argues that even though the jurors were struck for cause, his trial counsel should have motioned to disqualify the jury panel or motioned for a mistrial "given the highly-prejudicial nature of the statements and the substantial risk that those statements poisoned the entire jury pool." Brief for appellant at 26.

We determine the record is sufficient to address this claim and that Deering cannot show that he suffered prejudice because of the jurors' comments. The two jurors who expressed "negative comments" toward defense counsel did not serve on the jury and there was no indication in the record that any of the jurors who served at trial would not be fair or impartial to Deering. Deering makes a conclusory allegation without supporting facts that the entire jury pool was "poisoned" against Deering. Deering cannot show that trial counsel was ineffective in failing to move to disqualify the entire jury pool or motion for a mistrial. This assignment of error fails.

## VI. CONCLUSION

We conclude the trial court did not err in granting the State's motion to endorse Dusatko. We further conclude that the record is insufficient on direct appeal to decide Deering's first two claims of ineffective assistance of counsel and his third claim of ineffective assistance of counsel fails.

AFFIRMED.