Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/16/2024 08:09 AM CST

State of Nebraska, appellee, v.
Jordon J. Miller, appellant.

___ N.W.2d ___

Filed February 16, 2024.    No. S-23-124.

1. **Pleas: Courts.** A trial court has discretion to allow defendants to withdraw their guilty or no contest pleas before sentencing.
2. **Pleas: Appeal and Error.** An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion.
3. **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.
4. **Effectiveness of Counsel: Appeal and Error.** In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.
5. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.
6. ____: ____. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.
7. **Pleas.** When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution.

8. **Pleas: Proof.** A defendant moving to withdraw his or her plea before sentencing has the burden to show the grounds for withdrawal by clear and convincing evidence.

9. **Pleas.** A defendant's change of mind alone is not a fair and just reason to withdraw a guilty or no contest plea.

10. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

11. ____: ____: ____: ____. An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

12. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

13. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

14. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

15. ____: ____. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

16. ____: ____. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

17. **Convictions: Effectiveness of Counsel: Pleas: Proof.** When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest.

18. **Effectiveness of Counsel.** The viability of any defense goes to the likelihood of whether a rational defendant would have insisted on going to trial.

19. **Double Jeopardy: Speedy Trial: Indictments and Informations.** When an amended information is filed, the relevant question for statutory speedy trial purposes under Neb. Rev. Stat. § 29-1207 (Reissue 2016) is whether any count charged in the amended information is the same "offense" charged in the original information (and therefore whether the speedy trial clock should run from the filing of the original information) or whether it is a new "offense" charged for the first time in the amended information (and therefore whether the speedy trial clock should run from the filing of the amended information). The question whether a count in an amended information is a new "offense" should be determined based on principles applied to determine whether it would violate double jeopardy if a new prosecution on the count were commenced after completion of the prosecution for a count charged in the original information.

20. **Double Jeopardy.** The Double Jeopardy Clauses of the U.S. and Nebraska Constitutions are coextensive and protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.

21. **Double Jeopardy: Statutes: Proof.** Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether, for double jeopardy purposes, there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

22. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

23. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations

of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Jordon J. Miller appeals his plea-based conviction and sentence in the district court for Douglas County for second degree murder. Miller generally claims that the district court erred when it overruled his motion to withdraw his plea, that his statutory right to a speedy trial was violated, and that the court imposed an excessive sentence. He also contends that he was provided ineffective assistance of trial counsel in various respects. We affirm Miller's conviction and sentence.

## STATEMENT OF FACTS

On May 6, 2020, the State filed an information charging Miller with one count of criminal conspiracy to promote or facilitate the commission of the felony of discharging a firearm at an occupied motor vehicle. The charge against Miller arose from an incident that occurred on March 9 after a codefendant fired shots from an address in Omaha, Nebraska, at a passing black Dodge Dart occupied by Jade Lea. Miller and other codefendants entered a black Jeep that had just pulled up to the address in a hurried fashion. The Jeep took off in pursuit of the Dart. After the Jeep caught up to the Dart, shots were fired from the Jeep toward the Dart. Lea suffered a gunshot wound, and he later died from the injury.

On May 20, 2020, Miller filed a plea in abatement requesting dismissal of the information on the basis that the State adduced insufficient evidence at the preliminary hearing to show probable cause to support the charge. After a hearing, on September 24, the court overruled Miller's plea in abatement. On November 30, Miller filed a motion for a bill of particulars, and the court overruled the motion on December 17.

The district court held a status hearing on January 29, 2021, to set the matter for a jury trial. At the hearing, the State's attorney stated that he had taken "a look at our speedy trial clock" and noted "a number of motions by the defense," specifically, the plea in abatement and the motion for a bill of particulars. The State's attorney asserted that his calculations showed that "we have about two and a half months left of speedy trial." The State's attorney stated that he had not "looked at that number exactly" and that it was a "rough calculation." The State's attorney then noted that although the current information charged only a criminal conspiracy, "[t]he State has the intention to file murder in the first degree and use charges," and the State's attorney therefore estimated that it would "take about a week to try this case" as a first degree murder.

In response, Miller's counsel stated that "given the State's intention to amend the information" from a conspiracy charge to premeditated murder and firearm charges, it was premature to schedule the case for trial. Miler's counsel stated that if the State amended the information, Miller intended to request a preliminary hearing, as well as file pretrial motions and conduct additional discovery related to the new charges in the amended information. Miller's counsel noted that there would likely be new discovery materials related to potential testimony of alleged coconspirators and that the "defense would need to analyze and investigate those materials."

The district court responded that "the clock's still running" and that "we've got to have a trial." The court therefore

stated that it would set a jury trial for April 5, 2021. Miller's counsel inquired whether the court was setting a trial on the current information rather than on the expected amended information. The court stated that it was "setting this for trial whatever it may be" and that "even if [the State] files an amended information putting it at first degree murder, if there are no motions thereafter the clock still runs." Miller's counsel asked whether the court would be "willing to entertain defense motions that relate to pretrial litigation as well as the likely need to continue the April 5th trial date" in the event the State filed an amended information. The court stated that if Miller "want[ed] to file some type of motion," the court would change the trial date but that "until a motion is filed, it's set for trial April 5th." The hearing concluded, and the court filed an order setting a jury trial for April 5.

The State filed an amended information on February 26, 2021. The State again charged the count of criminal conspiracy and added charges of first degree murder based on a theory of deliberate and premeditated malice, discharging a firearm at an occupied motor vehicle, and two counts of use of a deadly weapon (firearm) to commit a felony.

The court held a preliminary hearing on the amended information on April 1, 2021. In support of the amended information, the State presented testimony by a detective who had investigated the shooting of Lea, which testimony supplemented testimony the detective had provided in support of the original information. Regarding the new charges, the detective testified that investigators had obtained video surveillance related to the incident, including video from the address where Miller and his codefendants entered the Jeep and video from the address where shots were fired from the Jeep at the Dart. The detective testified that the videos showed that when Miller and his codefendants entered the Jeep, "Miller entered into the rear passenger seat behind the driver," and that when, less than 10 minutes later, shots were fired from the Jeep at the Dart, the shooter's position in the Jeep was "the driver's

side rear passenger." The detective further testified that she had interviewed one of Miller's codefendants, Trevian Harris, who identified Miller as the shooter. Harris told her that he had given a gun to Miller and that "Miller then came out of the window" and "up over the vehicle and fired at what ended up being . . . Lea."

At the conclusion of the April 1, 2021, preliminary hearing, the court ruled that probable cause was shown for each count in the amended information, and it therefore stated that the matter should be bound over for further hearings or for trial. Miller's counsel then made an oral motion to continue the trial from the previously set date of April 5 "based on the volume of materials that we received in this case and the circumstances surrounding the limitations that Douglas County Corrections has placed on attorneys in terms of communication directly with clients, sharing media directly with clients, and the restrictions that have impeded that." Miller's counsel stated that the first available date that had been given that would allow sufficient time to prepare was October 25. The court questioned Miller's counsel and then addressed Miller directly and asked whether it was his request to continue the trial until October 25. Miller replied that it was. The court then asked Miller whether he understood that "this will take the trial period out of the six-month period for a speedy public trial," and Miller replied that he did. Miller also stated in response to questioning by the court that no one was forcing or coercing him to request a continuance and that he believed the continuance was in his best interests. The court granted Miller's request and continued the trial to October 25.

At a hearing on October 19, 2021, the parties announced that a plea agreement had been reached pursuant to which the State would file an amended information charging Miller with one count of second degree murder and Miller would plead no contest to that charge. Prior to accepting Miller's plea, the court engaged in a colloquy with Miller regarding his understanding of his constitutional rights. Miller generally

indicated that he understood his rights and the nature of the plea and that he wished to enter a plea of no contest. However, after Miller responded affirmatively that he had sufficient time to discuss the plea and his available defenses with his attorney, the court asked Miller whether he was satisfied with his attorney and whether he believed that his attorney had properly represented him throughout the case. Miller responded, "No." When the court asked Miller the reason for his response, Miller stated, "Because I haven't seen any of my discovery," and he specifically stated that he had not seen the videos or "any statements made against" him. Miller stated that "this stuff is coming fast" and that he was "really getting rushed." The court then told Miller that he did not have to enter a plea that day, but "[i]f you don't enter a plea to the amended charge, the State of Nebraska can withdraw the plea agreement and you would be proceeding to trial on the original charges." The court asked Miller what he wanted to do, and Miller stated he wanted to "[p]lead no contest." Miller indicated in response to questioning by the court that no one was forcing or coercing him to enter the plea and that it was his voluntary act.

The plea hearing continued with the State's presentation of a factual basis for the plea to second degree murder. After the factual basis had been presented, the court again asked Miller how he wanted to plead, and Miller replied, "Not guilty." The court responded that the plea of not guilty would conclude the hearing and that "[w]e will proceed then with the trial on Monday then." The State's attorney stated that the amended information charging only second degree murder would be withdrawn and that the State would add a new charge of possession of a weapon by a prohibited person to the charges in the first amended information.

Miller's counsel asked for and was granted a 5-minute recess to speak with Miller outside the courtroom. After the recess, Miller's counsel stated Miller now wished to plead no contest to the agreed-upon amended information charging

second degree murder. The State stated that it was willing to proceed with the plea agreement. The court asked Miller whether he wished to withdraw his plea of not guilty, and Miller responded that he did. The court stated to Miller that if he entered a plea of no contest, the court would find him guilty of the charge, but that if he did not enter a plea of no contest, the court would "enter a plea of not guilty, . . . set this matter for a jury trial, [and] start the jury trial on Monday," with the plea agreement being withdrawn. The court then asked Miller how he plead to the amended charge of second degree murder, and Miller responded, "No contest." The court then stated its findings, including that Miller's "plea was made freely, knowingly and voluntarily" and that there was a factual basis for the plea. The court accepted the plea and found Miller guilty of the charge of second degree murder.

On November 1, 2021, Miller filed a pro se motion to withdraw his plea. A hearing was held on December 7 to consider the motion and Miller's motion to appoint new counsel. Miller's counsel appeared at the hearing and stated that he and Miller had discussed the motions and the potential legal risks of proceeding with the motions, but that Miller had advised counsel that he wished to proceed with the motions and to do so pro se. Miller's counsel noted for the record that he did not believe that it was in Miller's best interests to proceed with the motions.

The court then addressed Miller and asked him why he should be allowed to withdraw his plea. Miller responded by stating, as he had stated at the October 19, 2021, plea hearing, that he had not been allowed to examine the discovery evidence, including videos and statements made against him. Miller stated that at the time of the October 19 hearing, he did not know that it was his right to examine the discovery evidence. The court asked Miller whether it would not be more prudent for Miller to examine the discovery evidence before he moved to withdraw his plea; the court explained that if Miller withdrew his plea but later reviewed the evidence and

decided it would be better to plead to the amended charge of second degree murder, the State might not agree and instead decide to go to trial on the various charges in the first amended information. Miller generally replied that he could not trust his counsel to provide the discovery evidence for Miller to review.

The court engaged with Miller's counsel regarding the extent of the discovery evidence Miller would need to review and the time it would take for Miller to review it personally. During this discussion, Miller's counsel noted "barriers" that had been put into place by the correctional facility "since approximately March of 2020" in response to the COVID-19 pandemic and that such barriers made it difficult for attorneys to convey materials to clients in custody. The court brought the State's attorney into further discussion of this issue.

The court addressed Miller and stated that he had a choice to proceed with his motion to withdraw his plea that day but that the court strongly suggested that Miller choose to wait until he had a chance to review the discovery evidence before deciding whether to proceed with the motion. Miller stated that he wished to continue consideration of his motion to a later date. After further discussion with Miller's counsel, the court ordered the motion continued until the next month with the understanding that counsel would remain and assist Miller's review of the discovery evidence.

The court thereafter granted continuances of Miller's sentencing to allow Miller to review the discovery evidence. At a hearing on March 28, 2022, Miller's counsel informed the court that he and Miller had proceeded with, but not yet completed, Miller's review of the discovery evidence. Miller's counsel also informed the court that Miller wished to withdraw his motion for appointment of new counsel and for counsel to prepare an amended motion to withdraw his plea. The court granted Miller leave to amend the motion to withdraw his plea.

On July 7, 2022, Miller filed an amended motion to withdraw plea prepared by counsel. In the amended motion, Miller asserted two bases for withdrawal of the plea: (1) The correctional facility's COVID-19 protocols had prevented Miller from personally reviewing the discovery evidence and from adequately preparing for trial, and (2) the prosecution failed to disclose to Miller that it had reached a plea agreement with one of his codefendants, Harris, and that it intended to have Harris testify against Miller.

At a hearing on the amended motion held on August 1, 2022, in addition to presenting other evidence in support of the motion, Miller personally addressed the court to explain why he entered the plea. Miller stated that on the day he entered his plea he did not want to enter a plea because he had not been able to review the discovery evidence. However, Miller stated, after he raised that issue to the court in the hearing, the court told him he "had probably about six days until [he] had to be to trial" and he "knew that wasn't enough time." Miller thought "it would be stupid . . . to go into this trial" without having reviewed the discovery evidence, but he knew that the discovery evidence was extensive and that "there was no way for [him] to get through it." Miller stated that now that he had reviewed the discovery evidence, it was clear that there was "evidence that proves [his] innocence" and that it was evidence he had never been able to see before he entered his plea because of the COVID-19 restrictions that were in place. Miller stated that the only reason he entered a plea of no contest was because, after taking the recess with his counsel at the October 19, 2021, hearing, he felt it was the only thing he could do "because it wouldn't have been smart for [him] to go to trial in five or six days when the county jail still at that time was shut down" and he could not "come in contact with [counsel] to go over these things."

After the hearing, on October 21, 2022, the court entered an order overruling Miller's amended motion to withdraw his plea. The court found that Miller freely, knowingly, and

voluntarily entered his plea of no contest to second degree murder. The court reviewed the terms of the plea agreement, which included the State's dismissal of several charges. The court determined that Miller's "reasons for withdrawing his plea of no contest [did] not rise to the level of granting his request." The court reasoned that Miller "knew what the circumstances of this crime were as his [sic] was in the vehicle from which the shots came, which killed the victim in this matter, and he is alleged to be the shooter."

Thereafter, the court granted Miller's counsel's motion to withdraw as counsel, and Miller's new counsel entered an appearance. Miller's new counsel moved for continuance of Miller's sentencing, and the court continued sentencing to January 17, 2023. On that day, Miller's new counsel filed a second amended motion to withdraw the plea. In the second amended motion, Miller resubmitted the arguments from his first amended motion. Miller added allegations that during the recess at the October 19, 2021, plea hearing, his original counsel advised him that if he proceeded to trial, he would be found guilty of all the charges in the first amended information and the additional charge then being offered by the State. Miller further alleged that his counsel told him he would be sentenced to a mandatory life sentence without the possibility of parole. Miller continued, saying that the reason he would receive a life sentence was because his counsel was not prepared to go to trial and could not adequately prepare for trial in 6 days and that therefore, Miller would be found guilty. Miller stated that these facts were not presented by his original counsel when his original counsel argued his first amended motion to withdraw plea to the court on August 1, 2022.

As noted, the court heard Miller's second amended motion to withdraw plea at the sentencing hearing on January 17, 2023. Miller's new counsel stated, inter alia, that after the hearing on Miller's pro se motion to withdraw plea, Miller's original counsel had shown Miller some, but not all, of the

evidence. Miller's new counsel stated that the small amount of discovery evidence Miller saw was enough for him to ask original counsel to file the first amended motion to withdraw plea. Miller's new counsel asserted that to date, Miller had "seen a smattering of the evidence, [and] he has determined from the smattering that he has a defense, a viable defense in this case." In response, the State argued in part that Miller's claims regarding ineffective assistance of original counsel seemed "more appropriately placed in a motion for postconviction relief" than in a motion to withdraw his plea.

After hearing further argument, the court overruled Miller's second amended motion to withdraw his plea. Before making its ruling, the court first noted the felony charges that were dismissed by the State pursuant to the plea agreement and the potential sentences Miller might have received if convicted of those charges. The court also noted the colloquy in which it had engaged with Miller at the plea hearing to determine whether Miller was freely, knowingly, and voluntarily entering his plea. The court stated that it did not know of "any rule that the defendant has to review all the discovery" and stated that instead it was "the responsibility of the attorney." The court stated that the facts as presented by the State in its factual basis to support the plea to second degree murder were not complicated. The court stated that it needed "to rely upon the statements by the defendants when they enter their pleas" and that Miller either "did or he didn't do it," that "he was in the car or he wasn't in the car," and that "either he shot the person or he didn't shoot the person." Based on this reasoning, the court concluded that Miller's second amended motion to withdraw his plea should be overruled.

Having overruled Miller's motion to withdraw his plea, the court proceeded to sentencing Miller for second degree murder. Miller's counsel stated that because Miller was maintaining that he had a defense and should be allowed to withdraw his plea, Miller's ability to argue regarding sentencing was "kind of handcuffed." However, Miller's counsel argued

that the court should consider Miller's "horrible youth" and Miller's limited criminal history as an adult. Miller's counsel also stated that Miller was sorry that the events underlying this case had occurred but also noted that Miller had to walk an "ethical tightrope" between showing he was taking responsibility for his action but not admitting responsibility for crime charged. Miller also spoke to the court and stated that he was "sorry something like this happened."

In response, the State noted Miller's criminal history, including his juvenile history, and it noted that Miller's earlier felony conviction as an adult also involved a shooting. The State encouraged the court to consider victim impact statements submitted by Lea's family and the results of testing performed by probation.

After hearing arguments from Miller and the State, the court expressed condolences to the victim's family and generally commented on the social implications of violence such as that involved in the present case. The court stated that based on the evidence in this case, "this is a very serious matter," and that it therefore would sentence Miller to imprisonment for 65 years to life.

Miller appeals his conviction and sentence.

## ASSIGNMENTS OF ERROR

Miller claims that the district court erred when it overruled his second amended motion to withdraw his plea. Related to this claim, Miller claims that the State's failure to allow him to personally review the discovery evidence constituted prosecutorial misconduct. He further claims that the district court abused its discretion when it forced him to enter his plea at the October 19, 2021, hearing by threatening that he would have to go to trial in 6 days without having personally seen the discovery evidence. Miller also claims that his statutory right to a speedy trial was violated and that the district court imposed an excessive sentence. Miller further claims that his original counsel provided ineffective assistance when such

counsel (1) failed to request a continuance of the October 19, 2021, plea hearing to allow him to share the discovery evidence with Miller and prepare a defense; (2) recommended that Miller plead no contest to second degree murder when Miller had not personally reviewed the discovery evidence; (3) failed to fully comply with the district court's order to share all the discovery evidence with Miller; and (4) failed to calculate the statutory time for speedy trial and to bring a timely motion for absolute discharge on speedy trial grounds.

## STANDARDS OF REVIEW

[1,2] A trial court has discretion to allow defendants to withdraw their guilty or no contest pleas before sentencing. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id*.

[3,4] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Warner, supra*. In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

[5,6] A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Earnest, ante* p. 527, 997 N.W.2d 589 (2023). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id*.

## ANALYSIS

*District Did Not Abuse Its Discretion*
*When It Overruled Miller's Motion*
*to Withdraw His Plea.*

Miller first claims that the district court erred when it over-ruled his second amended motion to withdraw his plea. In the absence of evidence of attorney-client communications and the theory of Miller's alleged defense, we conclude that based on the record before it, the district court did not abuse its discretion.

Miller claims that the State's failure to allow him to person-ally review the discovery evidence constituted prosecutorial misconduct and that this contributed to the district court's alleged abuse of discretion when the court forced him to enter his plea at the October 19, 2021, hearing by threatening that he would have to go to trial in 6 days without having personally seen the discovery evidence. Miller's claim of prosecutorial misconduct in the nature of limiting his access to investiga-tive materials was not explicitly presented to or ruled on by the district court. We therefore do not consider it as a separate claim of error, but, instead, we read it as part of Miller's claim that he should have been allowed to withdraw his plea and we analyze it in that context.

Concerning the withdrawal of plea, Miller claims that the district court forced him to enter his plea when it threatened him that he would go to trial the next week. We do not read the district court's comments at the plea hearing as threats; rather, it was stating the consequences of Miller's decision to plead or not to plead. The validity of Miller's plea is consid-ered below in connection with the district court's consider-ation of whether Miller had a fair and just reason to withdraw the plea.

[7,8] The right to withdraw a plea previously entered is not absolute. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the

motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id.* The defendant has the burden to show the grounds for withdrawal by clear and convincing evidence. *Id.*

Miller filed three motions to withdraw his plea: a pro se motion, a first amended motion prepared by his original trial counsel, and a second amended motion prepared by his replacement counsel. The district court granted Miller's request to continue consideration of his pro se motion, and the court overruled the first amended motion. Miller's assignment of error on appeal relates to the second amended motion, which the court also overruled.

The reasons for withdrawal that Miller asserted in support of the second amended motion repeated reasons he had asserted in his earlier motions to the effect that he had not been able to personally review the discovery evidence before he entered his plea. Additionally, Miller asserted that he should be allowed to withdraw his plea because he had entered the plea based on deficient advice given to him by his original counsel and that after having personally reviewed some, but not all, of the evidence, he had determined that he had a viable defense and that therefore, his original counsel's advice was not in his best interests.

When it overruled Miller's second amended motion, the district court generally repeated the reasoning it had given when it overruled his first amended motion. The court noted the benefit Miller received because of the plea agreement, and it also noted its colloquy with Miller at the plea hearing, which convinced the court that he was freely, knowingly, and voluntarily entering his plea. The court stated that when accepting Miller's plea, it had to rely on the factual basis presented by the State and that it had to rely on Miller's statements at the plea hearing because Miller would have personal knowledge of whether the asserted factual basis was accurate.

Miller's stated reasons for withdrawing his plea were supported only by his own allegations. Without knowing the

contents of Miller's communications with his original counsel, the evidence that Miller alleged would provide him a defense, or the specific defense Miller alleged he could assert, the district court could not assess whether that purported defense provided a fair and just reason to allow Miller to withdraw his plea. Therefore, the court properly focused on the benefit of the plea and Miller's representations when he made his plea. On appeal, the record does not provide us with any more information regarding the alleged defense than that which was before the district court.

[9] Without a record to support Miller's assertions that his original counsel's advice to enter a plea was not in Miller's best interests and that he had a viable defense, we can only read Miller's asserted reason to withdraw his plea as being that he changed his mind about the plea. We have held that "a defendant's change of mind alone is not a fair and just reason to withdraw a guilty or no contest plea," and we reasoned that "[i]f second thoughts alone could constitute a fair and just reason to withdraw a plea, the requirement that a defendant demonstrate a fair and just reason before being permitted to withdraw a plea would be rendered completely hollow." *State v. Warner*, 312 Neb. 116, 126, 977 N.W.2d 904, 912 (2022). Without more than Miller's bare assertion that he had a viable defense, Miller has not demonstrated a fair and just reason to withdraw his plea.

We conclude that based on the record before it, the district court did not abuse its discretion when it overruled Miller's second amended motion to withdraw his plea. We reject this assignment of error.

*Miller's Claims of Ineffective Assistance of*
*Counsel Related to Entry of Plea Cannot*
*Be Reviewed on Direct Appeal.*

Miller makes four claims of ineffective assistance of counsel, three of which relate to the entry of his plea and withdrawal of the plea that we consider in this section of our

analysis. These include claims that his original counsel provided ineffective assistance when such counsel (1) failed to request a continuance of the October 19, 2021, plea hearing to allow him to share the discovery evidence with Miller and prepare a defense; (2) recommended that Miller plead no contest to second degree murder when Miller had not personally reviewed the discovery evidence; and (3) failed to fully comply with the district court's order to share all the discovery evidence with Miller. We conclude that the record on direct appeal is not sufficient to review these claims of ineffective assistance of counsel.

[10] On direct appeal, Miller has new counsel who is neither his original trial counsel nor the replacement counsel who represented Miller in connection with the second amended motion to withdraw his plea and at sentencing. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Dap, ante* p. 466, 997 N.W.2d 363 (2023).

[11,12] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

[13] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the

ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

[14-16] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dap, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

[17,18] When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). The viability of any defense goes to the likelihood of whether a rational defendant would have insisted on going to trial. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

Applying these standards to Miller's three claims related to the entry of his plea, we determine that the record on direct appeal is not sufficient to review these claims. Each of the claims involves counsel's advice, actions, or lack of action relating to the entry of the plea and counsel's alleged failure to advise Miller accurately or completely regarding the evidence against him. The record on direct appeal does not contain evidence of the conversations between Miller and his counsel, nor does it contain the evidence that Miller asserts would have been helpful to his defense. Without such

evidence, the record does not inform us regarding the reasoning behind counsel's advice to Miller or counsel's actions or lack of action regarding the plea. The record also does not establish the evidence Miller asserts would have provided him a defense and therefore does not allow us to assess the viability of such defense and whether it provides a reasonable probability that Miller would have insisted on going to trial rather than entering the plea.

We cannot conclusively determine on this record whether counsel provided deficient performance or whether Miller was prejudiced by the alleged deficient performance, and therefore, the record is insufficient to review these claims of ineffective assistance of counsel on direct appeal.

*Miller's Claim That Trial Counsel Provided Ineffective*
*Assistance When Counsel Failed to Move for*
*Absolute Discharge on Speedy Trial Grounds*
*Cannot Be Reviewed in Its Entirety*
*on Direct Appeal.*

Miller's fourth claim of ineffective assistance of counsel asserts that his original counsel provided ineffective assistance when counsel failed to calculate the statutory time for speedy trial and to bring a timely motion for absolute discharge on speedy trial grounds. We conclude that the record on direct appeal is not sufficient to review the entirety of this claim but that the record shows that Miller cannot show deficient performance regarding certain counts that were not subject to discharge on speedy trial grounds.

In addition to the claim of ineffective assistance of counsel related to speedy trial, Miller separately claims that "speedy trial was violated." He does not and cannot claim that the district court erred with respect to a speedy trial ruling because no motion for absolute discharge on speedy trial grounds was filed. We cannot find error on an issue that was not presented to or ruled on by the district court, and therefore, we do not consider this separate claim that "speedy trial was violated."

However, because he has new counsel on appeal, Miller can claim ineffective assistance of original trial counsel for alleged failure to present the issue to the district court, and we therefore consider the speedy trial issue in the context of Miller's claim of ineffective assistance of counsel.

Regarding speedy trial, Miller argues that under the 6-month speedy trial statute, Neb. Rev. Stat. § 29-1207 (Reissue 2016), the last day that he should have been brought to trial was March 25, 2021. Miller calculates this date by starting with May 5, 2020, which he asserts was the date the original information was filed. We note for completeness that the original information charging Miller with one count of criminal conspiracy was filed on May 6, 2020. Miller contends that, without any time being excluded, the last day to bring him to trial would have been November 5, 2020. Miller concedes that two periods should be excluded: (1) the period from May 20, when he filed his plea in abatement, until September 24, when the court denied his plea in abatement, a total of 123 days; and (2) the period from November 30, when he filed his motion for a bill of particulars, until December 17, when the court overruled the motion, a total of 17 days. Miller contends that adding the total of 140 days to the 6-month period ending November 5, 2020, results in a last date for trial of the original conspiracy charge on March 25, 2021. Miller does not refer to the significance of the amended information filed February 26, 2021.

Miller claims that he received ineffective assistance of counsel because, inter alia, his trial counsel "did not examine the issue of speedy trial and bring a motion fo[r] dismissal on [s]peedy trial grounds." Miller generally argues that counsel should not have simply accepted the State's calculation at the January 29, 2021, pretrial hearing that there were still "about two and a half months" left on the speedy trial clock. Miller contends that counsel should have done an independent calculation and that had he done so, he would have realized that the time for trial would have run prior to the April 5 date

that the court set for trial at that hearing. He also asserts that counsel should have filed a motion for absolute discharge at or prior to the April 1 hearing rather than asking for a continuance. We observe that, insofar as they relate to the original information charging conspiracy, the record is consistent with the dates Miller used in his calculation of the speedy trial period, including the two excludable periods he identified and concedes extended the time for trial.

The State does not directly challenge the March 25, 2021, end date asserted by Miller and instead argues that the record refutes Miller's claim related to speedy trial because Miller waived his right to speedy trial at the April 1, 2021, hearing. The State notes that at that hearing, after the court found probable cause for the new charges added by the State in the first amended information, Miller's counsel requested, and the court granted, a continuance from the April 5 date to October 25 to allow Miller to prepare a defense to the new charges. The State cites § 29-1207(4)(b), which provides in part: "A defendant is deemed to have waived his or her right to speedy trial when the period of delay resulting from a continuance granted at the request of the defendant or his or her counsel extends the trial date beyond the statutory six-month period." The State also cites our decision in *State v. Mortensen*, 287 Neb. 158, 165, 841 N.W.2d 393, 400 (2014), in which we stated that under § 29-1207(4)(b), "if a defendant requests a continuance that moves *a trial date which has been set within the statutory 6-month period to a date* that is outside the 6-month period, that request constitutes a permanent waiver of the statutory speedy trial right." (Emphasis supplied.)

As noted, the State's argument does not appear to address the circumstance that at the January 29, 2021, hearing, the court set a trial date for April 5, which, assuming Miller's calculation of March 25 as the last date for trial is correct, was beyond the statutory 6-month period. If Miller's calculation is correct, his request for a continuance at the April 1 hearing was a request to move a trial date already outside the

6-month period to a later date outside the 6-month period. Furthermore, the State's argument does not explicitly address Miller's claim that counsel was ineffective for failing to calculate the speedy trial period and failing to file a timely motion for absolute discharge, which under Miller's calculation should have been filed prior to the April 1 hearing at which he requested the continuance.

However, we note that the speedy trial calculation in this case requires a determination of whether the same speedy trial clock applies to each, some, or all of the charges in the operative information. Miller's calculation of the speedy trial period begins simply with the filing of the May 6, 2020, original information and calculates the last day for trial as being March 25, 2021. The only charge that was set forth in the May 6, 2020, information was the conspiracy to discharge a firearm charge. On February 26, 2021, the State filed an amended information in which it alleged conspiracy and added charges of first degree murder, discharging a firearm at an occupied motor vehicle, and two counts of use of a deadly weapon (firearm) to commit a felony. Resolution of the speedy trial issue requires a determination of whether a new speedy trial clock began for the new charges when the State added those charges in the amended information. See, *State v. Hettle*, 288 Neb. 288, 848 N.W.2d 582 (2014); *State v. Gibilisco*, 279 Neb. 308, 778 N.W.2d 106 (2010).

In *State v. Hettle, supra*, we addressed the application of the speedy trial statute under circumstances where, as in the present case, an amended information adds new charges but also includes charges from the original information. We cited and agreed with the reasoning of cases from other jurisdictions to state the proposition that "the original and new charges run on different speedy trial clocks, so long as the 'new' charge was not one required to be joined with the original charges under double jeopardy principles," and that the "original charges continue with the same speedy trial clock, while the new

charges begin with their own new speedy trial clock." *State v. Hettle*, 288 Neb. at 297, 298, 848 N.W.2d at 591-92.

We elaborated on the reasoning for this proposition as being that "as to the charges the government is not required to join with the offenses previously charged, the government could easily obtain a 'fresh speedy trial clock' by simply waiting until completion of the prosecution for the original charges and beginning a new prosecution of the additional charges." *Id*. at 298, 848 N.W.2d at 592. We further reasoned that there was

> "no logical basis for concluding that, when the government chooses to add[,] in a superseding indictment[,] charges that it is not required to join with the charges contained in the original indictment, it must bring the defendant to trial on the added charges within the time period remaining on the speedy trial clock applicable to the charges contained in the original indictment."

*Id*. (quoting *U.S. v. Alford*, 142 F.3d 825 (5th Cir. 1998)).

We note that the cases we relied on in *Hettle* were largely federal cases that were applying the federal speedy trial statute and that were informed by federal statutes regarding joinder in criminal cases. Nebraska's statutes regarding speedy trial and joinder differ from their federal counterparts. While the federal cases speak in terms of an "original indictment" and a "superseding indictment," under Nebraska law it would be more proper to refer to counts in the original information and counts added to an amended information.

[19] Nevertheless, in *Hettle*, we applied the reasoning from the federal cases to our speedy trial statute, § 29-1207, which generally provides that a "person indicted or informed against for any offense shall be brought to trial within six months" and that the "six-month period shall commence to run from the date the indictment is returned or the information filed." When an amended information is filed, the relevant question for statutory speedy trial purposes is whether any count charged in the amended information is the same "offense"

charged in the original information (and therefore whether the speedy trial clock should run from the filing of the original information) or whether it is a new "offense" charged for the first time in the amended information (and therefore whether the speedy trial clock should run from the filing of the amended information). The reasoning we adopted in *Hettle* was that the question whether a count in an amended information is a new "offense" should be determined based on principles we apply to determine whether it would violate double jeopardy if a new prosecution on the count were commenced after completion of the prosecution for a count charged in the original information.

The reasoning set forth in *Hettle* guides the procedure that we use to determine in this case whether the new charges added in the amended information are subject to the speedy trial clock of the original information or to a new speedy trial clock based on the filing of the amended information. Because our reasoning in *Hettle* focuses on double jeopardy principles, particularly those principles related to a subsequent prosecution, we apply relevant double jeopardy principles to determine that question.

[20] We have recognized that the Double Jeopardy Clauses of the U.S. and Nebraska Constitutions are coextensive and protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. Lewis*, 313 Neb. 879, 986 N.W.2d 739 (2023). In certain cases, new counts are not the "same offense" for speedy trial purposes because they arose from different incidents that occurred on different dates from the counts alleged in the original information. See *State v. Gibilisco*, 279 Neb. 308, 778 N.W.2d 106 (2010) (noting that additional first degree sexual assault counts contained in amended information, which State alleged occurred during same timeframe and against same victim as was alleged in original information, nevertheless constituted separate and

distinct crimes and required State to present different evidence to prove each crime, so speedy trial clock restarted upon filing of amended information).

[21] In the instant case, however, the four counts added in the amended information were related to the same incident or were committed simultaneously with the conspiracy alleged in the original information. In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the U.S. Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." See, *State v. Lewis, supra*; *State v. Smith*, 294 Neb. 311, 883 N.W.2d 299 (2016). The question in this case is whether, as to each of the new counts added in the amended information, criminal conspiracy and the new charge each require proof of a fact which the other does not.

The State initially charged Miller on May 6, 2020, with criminal conspiracy to commit the felony of discharging a firearm at an occupied motor vehicle. Conspiracy was charged as a violation of Neb. Rev. Stat. § 28-202 (Cum. Supp. 2022), which provides in part:

> (1) A person shall be guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a felony:
>
> (a) He agrees with one or more persons that they or one or more of them shall engage in or solicit the conduct or shall cause or solicit the result specified by the definition of the offense; and
>
> (b) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

In the amended information filed on February 26, 2021, the State added a charge of first degree murder, a charge of discharging a firearm at an occupied motor vehicle, and two charges of use of a deadly weapon (firearm) to commit a felony, one related to each of the new charges.

Criminal conspiracy requires proof of an agreement with one or more persons to engage in the commission of a felony and an overt act in furtherance of the conspiracy. None of the new charges added in the amended information requires an agreement with another person or persons, and therefore, criminal conspiracy requires proof of a fact or element that each of the new charges does not. Also, each of the new charges requires proof of facts or elements beyond the requirement in a conspiracy of committing an overt act toward the commission of a felony. A conviction for the substantive offense of discharging a firearm at an occupied motor vehicle requires proof that the defendant discharged the firearm, while criminal conspiracy to commit that offense requires only proof of an overt act toward commission of that offense. Similarly, first degree murder requires proof of killing a person with deliberate and premeditated malice, which are facts not required to prove criminal conspiracy.

Regarding the two counts of use of a deadly weapon, we have stated that "the *Blockburger* test does not apply when there is clear legislative intent regarding whether conduct involves a single offense or multiple offenses." *State v. Ballew*, 291 Neb. 577, 590, 867 N.W.2d 571, 582 (2015) (noting *Blockburger* test is aid to statutory interpretation and is not controlling where there is clear indication of legislative intent). We have held that because Neb. Rev. Stat. § 28-1205 (Reissue 2016) provides that use of a weapon to commit a felony "shall be treated as separate and distinct offenses from the felony being committed," conviction for the offense and for the underlying offense does not violate double jeopardy rights. See *State v. Mata*, 273 Neb. 474, 730 N.W.2d 396 (2007). Moreover, because the use charges are related to the two new counts that we determined are not the same offense as the conspiracy charge, the use charges are also not the same offense as conspiracy.

In summary, conspiracy requires proof of a fact that none of the new charges requires, and each of the new charges

requires proof of a fact or facts that conspiracy does not. Therefore, double jeopardy would not bar successive prosecution for any of the new charges, and under our reasoning in *State v. Hettle*, 288 Neb. 288, 848 N.W.2d 582 (2014), a new speedy trial clock applies to the four new counts that were added to the amended information. That is, as compared to the original conspiracy count, the four new counts run on "different speedy trial clocks." *Id*. at 297, 848 N.W.2d at 591.

The speedy trial clock for the four new counts added in the amended information began running on the date the district court ruled that probable cause was shown for each of the counts in the amended information, April 1, 2021. See *State v. Boslau*, 258 Neb. 39, 601 N.W.2d 769 (1999). That same day, Miller requested and was granted a continuance of the April 5 date that had been set for trial on all charges so that he could prepare for the four new charges. In requesting the continuance to a date in October, Miller knowingly requested a continuance to a date outside the expiration of the 6-month statutory speedy trial clock that, as to the four new counts, began running on April 1, and he therefore waived his statutory speedy trial right as to those four counts. See *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014). Miller's trial counsel therefore was not ineffective for failing to file a motion to discharge the four new counts because such a motion would not have been successful in having those four counts discharged.

Under the *Hettle* analysis, however, the speedy trial clock for the criminal conspiracy charge would continue to run from the filing of the original information in May 2020, even though the same charge was included in the amended information. Assuming that Miller's calculation of the speedy trial clock for that charge is correct, we determine the last day Miller could have been brought to trial on the charge was March 25, 2021, and if Miller's counsel had moved for absolute discharge, that count presumably could have been discharged.

Assuming without deciding that the conspiracy count could have been discharged and that therefore, counsel's performance was deficient for failing to move for discharge, under the *Strickland* framework, we consider whether Miller can show prejudice. Because Miller's conviction for second degree murder was based upon a plea of no contest, in order to show prejudice, Miller needs to show a reasonable probability that but for the errors of counsel, he would have insisted on going to trial rather than pleading no contest. See *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). Viewing Miller's claim of ineffective assistance of counsel relating to speedy trial in isolation, we determine it appears unlikely Miller could show a reasonable probability that if the conspiracy count had been discharged, he would have insisted on going to trial on the remaining four counts rather than pleading no contest to second degree murder.

However, as discussed above, Miller makes additional claims of ineffective assistance of counsel relating to the entry of his plea in which he generally asserts that counsel's advice to accept the plea agreement was in error. It is possible that Miller could show that such advice was in error and that part of the reason the advice was in error was because the conspiracy count could have been discharged. Because discharge of the conspiracy count is potentially relevant to his showing of prejudice related to his other claims of ineffective assistance of counsel related to the plea, we cannot say on this record on direct appeal that Miller cannot show prejudice related to his claim of ineffective assistance of counsel for failing to move for discharge of the conspiracy count on speedy trial grounds.

In summary, we determine that to the extent Miller's claim of ineffective assistance of trial counsel related to speedy trial concerns the four counts added in the amended information, the record on direct appeal is sufficient to demonstrate that he cannot show that counsel was ineffective for failing to move for absolute discharge of those four counts. However, we

determine that the record on appeal is not sufficient to review the merits of the claim of ineffective assistance of counsel to the extent it relates to discharge of the original criminal conspiracy count on speedy trial grounds.

*The District Court Did Not Abuse Its*
*Discretion When It Sentenced Miller.*

Miller finally claims that the district court imposed an excessive sentence. We determine that the district court did not abuse its discretion in the sentence it imposed.

Miller pled no contest to and was convicted of second degree murder, a Class IB felony under Neb. Rev. Stat. § 28-304(2) (Reissue 2016). A Class IB felony is punishable by a sentence of imprisonment for a minimum of 20 years and a maximum of life. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Therefore, Miller's sentence of imprisonment for 65 years to life was within the statutory limits, and it will not be disturbed on appeal absent an abuse of discretion.

[22,23] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Cooke*, 311 Neb. 511, 973 N.W.2d 658 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Miller generally argues that the district court "should have exercised more discretion in fashioning a sentence." Brief for appellant at 26. Miller reviews mitigating factors argued by his counsel at the sentencing hearing, including his age and background. He also notes that he expressed that he was sorry

the victim had been shot, although he did not admit that he had fired the shots. Miller contends that the evidence in this case indicates that the shooting was done recklessly rather than in a "thought out manner," *id*., and he argues that this warrants a shorter sentence of imprisonment within the range of 20 years to life applicable to a Class IB felony.

The district court's comments at sentencing generally focused on the nature of the offense and the loss of the victim's life. While the court did not discuss all the relevant factors or the mitigating factors urged by Miller, we have "rejected the notion that a sentencing court is required to articulate on the record that it has considered each sentencing factor and to make specific findings as to the facts that bear on each of those factors." *State v. Earnest, ante* p. 527, 534, 997 N.W.2d 589, 595 (2023).

The State notes various factors, in addition to those specifically stated by the court, that were presented to the court in the presentence investigation report and that support the sentence imposed. Such factors include Miller's criminal history, which included numerous juvenile incidents and offenses as an adult that involved firearms; various rules violations while Miller was serving a prison sentence; and risk assessments that showed Miller to be at a high or very high risk of recidivism. The State also notes the benefit Miller received from the plea agreement, pursuant to which several felony charges were dismissed.

We have considered the entire record, and considering all the relevant factors, we cannot say the district court abused its discretion when it sentenced Miller. There were factors in the record to support the sentence, and there was no indication that the court relied on irrelevant matters or based its sentence on improper factors. The record provides a sound basis for the sentence imposed, and we find no abuse of discretion. We therefore conclude that the sentence was not excessive.

## CONCLUSION

We determine that the district court did not abuse its discretion when it overruled Miller's second amended motion to withdraw his plea. We further determine that the record on direct appeal is not sufficient to consider Miller's three claims of ineffective assistance of trial counsel. We determine that Miller's claim of ineffective assistance of counsel related to absolute discharge on speedy trial grounds cannot be reviewed based on the record on direct appeal to the extent the claim involves the criminal conspiracy count, but we determine that the record demonstrates that counsel's failure to move for discharge of the four new counts added in the amended information was not deficient performance. We finally determine that the district court did not abuse its discretion in its sentencing of Miller. We therefore affirm Miller's conviction and sentence.

AFFIRMED.