IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SAVALA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROBERT A. SAVALA, APPELLANT.

Filed October 15, 2024.    No. A-24-276.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Timothy M. Eppler for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Robert A. Savala pled no contest to one count of possession of a firearm in conjunction with a Class IIA felony drug violation. The district court for Lancaster County sentenced him to 5 to 8 years' imprisonment. On appeal, Savala asserts that the district court imposed an excessive sentence. He also asserts that his trial counsel was ineffective for failing to properly advise him about his plea, failing to file a motion to suppress, and failing to advise him about surrendering bond. Upon our review, we affirm Savala's conviction and sentence.

## II. BACKGROUND

On January 10, 2024, the State filed an information in the district court charging Savala with one count of possession of a firearm in conjunction with a Class IIA felony drug violation, a Class II felony; two counts of possession of a controlled substance, a Class IV felony; and one count of resisting arrest, a Class I misdemeanor. Pursuant to a plea agreement, Savala agreed to

- 1 -

plead guilty or no contest to count I, possession of a firearm in conjunction with a Class IIA felony drug violation. Specifically, with respect to the charge to which Savala pled no contest to, the information alleged that Savala possessed a firearm in conjunction with the distribution of steroids, a Schedule III controlled substance. In return, the State agreed to dismiss the remaining counts in this case as well as dismiss a subsequent criminal case brought against Savala wherein he was charged with possession of a stolen firearm and possession of a controlled substance.

At the March 7, 2024, plea hearing, the State recounted the plea agreement to the court, and Savala confirmed that this was his understanding of the agreement. Savala entered a plea of no contest to count I. The court advised Savala of his constitutional rights, and Savala confirmed that he understood these rights and was freely and voluntarily waiving them. The court specifically informed Savala that he had the right to a separate hearing to determine the admissibility of any statements, admissions, or confessions he made to law enforcement and any evidence law enforcement seized during its investigation. The court also informed Savala that count I carried a maximum possible penalty of 50 years' imprisonment and that the court was not bound by any sentencing recommendations and was not required to grant him probation. Savala confirmed that he understood.

Savala also informed the court that he had told his trial counsel everything he knew about the case, that he was satisfied with his counsel's performance, and that he believed his counsel to be a competent lawyer. Savala stated that his trial counsel had not refused or neglected to do anything that Savala had asked of him. Savala confirmed that he had enough time to speak with his trial counsel about the case and that he did not need any more time to talk with his counsel.

The State provided the following factual basis for Savala's no contest plea. On August 24, 2023, officers of the Lincoln Police Department were surveilling Savala's residence after receiving a Crime Stoppers complaint that Savala was selling methamphetamine and steroids from his home. Officers observed Savala leaving his home in a vehicle with an expired registration. Officers followed Savala and observed him park the vehicle and enter a local drug store. As Savala was exiting the store, the officers approached him to discuss the expired registration.

During the conversation, it appeared to the officers that Savala was showing signs of recent methamphetamine use. The officers requested permission to conduct a pat down on Savala, to which Savala made a movement to his shorts and stated that he had no pockets. The officers pointed to pockets on Savala's shirt, and Savala changed the subject. Savala stated that he did not think there was anything illegal in his vehicle, but also said there could be "something" in his vehicle. Additional officers arrived at the scene and asked Savala for his consent to search his vehicle, which he denied.

Savala was warned not to use his cell phone during his conversation with the officers. Despite the warning, Savala continued texting. Officers were concerned that Savala was texting his girlfriend, who he had indicated was at his residence, and that she would destroy evidence in the home. Officers took Savala's phone from him and laid the phone on his vehicle. Savala moved toward his phone and grabbed it. Officers took the phone from Savala and placed him into custody.

A drug detection dog arrived at the scene and alerted to Savala's vehicle, indicating the presence of controlled substances. A search was conducted of the vehicle and nothing of evidentiary value was found. After officers read Savala his *Miranda* rights, Savala admitted that there could be drug paraphernalia in his residence. A search warrant for Savala's residence was

obtained, the home was searched, and officers found several items of drug paraphernalia with residue present. The items were tested, and the results were positive for methamphetamine. A loaded handgun and 38 vials of liquid anabolic steroids were also found in the home. Savala was interviewed at the jail and admitted to selling methamphetamine and steroids.

The court found that there was a sufficient factual basis for Savala's plea, accepted his plea of no contest, and found Savala guilty of possession of a firearm in conjunction with a Class IIA felony drug violation. The court ordered a presentence investigation report and scheduled a sentencing hearing.

Sentencing occurred on April 9, 2024. Savala's counsel emphasized the mental health struggles Savala has faced because of his military service and requested a sentence of probation to allow Savala to seek treatment. During allocution, Savala apologized to the court and requested a sentence of probation. Contrary to his written statement contained in the presentence report, Savala accepted full responsibility for his actions. The State argued that Savala was not a good candidate for probation because Savala was a danger to the community and to himself.

After the matter was submitted, the court indicated that it had reviewed the entire presentence report. Information in the report indicated that at the time of sentencing, Savala was 38 years old and a high school graduate. His criminal history includes "assault, strike, or cause bodily injury," and disturbing the peace. On these charges, Savala was sentenced to 18 months' probation and was satisfactorily released in October 2020. On the Level of Service Case Management Inventory, Savala scored as a high or very high risk in the key life areas of leisure/recreation, companions, alcohol/drug problems, and pro-criminal attitude.

The report also indicated that Savala had served in the military for 7 years between 2005 and 2011 and had been deployed at least twice. He was honorably discharged in 2011 and is considered 100 percent disabled by the U.S. Department of Veterans Affairs (VA). Due to his time in the military, Savala has continued to struggle with issues related to his physical and mental health.

In Savala's written statement regarding the circumstances of this offense, he blamed his ex-girlfriend for his actions. Savala claimed that she had abused him for years and contributed to his drug use. He further claimed that she was the reason he had a firearm in his home. He stated that he did not feel safe and had the gun for protection.

The court acknowledged that Savala had a limited criminal history and a successful military career. However, the court noted that despite struggling with mental health issues and having access to services through the VA, Savala had chosen not to take advantage of the treatment services available to him. The court also noted that while Savala had successfully completed probation a few years prior, the fact that he was convicted of a new crime in this case made probation a less suitable option. The court stated that the goal of probation was to help an offender to stop committing crime, and in Savala's case, the current offense demonstrated that probation was unsuccessful in this regard. The court also noted that in Savala's written statement, he failed to take responsibility for his own actions. The court stated that in light of this, his attempt to take responsibility at the sentencing hearing "r[a]ng . . . hollow." The court also noted that it was allowed to consider the underlying facts of the separate case which was dismissed. The presentence report disclosed that the offenses charged therein occurred 2 months after the offense for which he

was convicted and involved the theft of a firearm and continued possession of a controlled substance.

Having regard for the nature and circumstances of the crime, as well as Savala's history, character, and condition, the court found that imprisonment was necessary for the protection of the public. The court found that during any period of probation, Savala was likely to engage in additional criminal conduct and that a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. On count I, the court sentenced Savala to 5 to 8 years' imprisonment. He was given credit for 39 days served.

Savala appeals.

## III. ASSIGNMENTS OF ERROR

Savala makes the following assignments of error: (1) the district court erred in imposing an excessive sentence and (2) trial counsel was ineffective for failing to (a) adequately advise him about his plea, (b) file a motion to suppress, and (c) advise him about surrendering bond.

## IV. STANDARD OF REVIEW

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Dejaynes-Beaman*, 317 Neb. 131, 8 N.W.3d 779 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Zitterkopf*, 317 Neb. 312, 9 N.W.3d 896 (2024). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) prior defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. Excessive Sentence Claim

Savala asserts that the district court imposed an excessive sentence. He specifically argues that his sentence was excessive in light of Legislative Bill 253, passed on April 11, 2024, which provides for the creation of a veteran's justice program. He argues that the court failed to properly weigh his veteran status, military experience, mental health conditions, desire for mental health treatment, connections to his family and community, and his personal efforts at positive behavioral change.

Savala cannot and does not argue that his sentence was not within the applicable statutory range. Savala was convicted of possession of a firearm in conjunction with a Class IIA felony drug violation, a Class II felony. Neb. Rev. Stat. § 28-416(16) (Cum. Supp. 2022). Class II felonies are punishable by up to 50 years' imprisonment and a minimum of 1 year imprisonment. Neb. Rev.

Stat. § 28-105 (Cum. Supp. 2022). Savala's sentence of 5 to 8 years' imprisonment is well within the statutory guidelines.

Because Savala's sentence is within the statutory limits, we review his sentence for an abuse of discretion. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Upon our review, we find no abuse of discretion in the district court's sentencing determination. We begin by noting that Legislative Bill 253 was not passed until 2 days after the sentencing hearing and is not operative until July 1, 2025. Further, the record clearly shows that the district court seriously considered Savala's military history when determining Savala's sentence. The court's comments before rendering a sentence demonstrate that the court reviewed the entirety of the presentence report, which detailed Savala's military service, veteran status, and mental health conditions. The court specifically noted that Savala had not availed himself of many veteran services available to him prior to committing this offense. The court also noted that Savala had previously served a sentence of probation and despite his successful discharge, committed additional crimes leading to the conviction in this case.

Ultimately, the court weighed Savala's veteran status against other sentencing considerations and found that imprisonment was necessary for the protection of the public. It is not the function of the appellate courts to conduct a de novo review and a reweighing of the sentencing factors in the record. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). Instead, it is enough for us to conclude that the district court's reasons for Savala's sentence are not clearly untenable and do not unfairly deprive him of a substantial right and just result. Thus, Savala's sentence does not constitute an abuse of discretion. This assignment of error is without merit.

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

On appeal, Savala contends that he was denied the right to effective assistance of trial counsel in three respects. Before we reach the merits of each claim, we provide a brief background on ineffective assistance of counsel claims.

Savala is represented by a different attorney than the one who represented him in the district court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Zitterkopf*, 317 Neb. 312, 9 N.W.3d 896 (2024). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a no contest plea, the prejudice requirement is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

(a) Failure to Advise About Plea

Savala contends that his trial counsel was ineffective for failing to timely and accurately advise him such that he was unable to enter a well-informed plea. Savala argues that his trial counsel gave him only a day to determine whether to accept the plea agreement offered by the State. Savala also argues that his trial counsel advised him that if he entered into the plea agreement, he would be approved for diversion to the veteran's court, he would be released on bond after entering his plea, and he would receive a sentence of probation or 1 year imprisonment. Savala asserts that if his trial counsel had timely and accurately advised him about the realistic effects of pleading no contest, he would have elected to go to trial.

The record refutes Savala's claim that his trial counsel was ineffective in advising him about the plea agreement. During the plea hearing, Savala informed the court that he was satisfied with his trial counsel's performance and did not require any additional time to talk with his counsel:

> THE COURT: Have you told [trial counsel] everything you know about this case?
> [SAVALA]: Yes, Your Honor.
> THE COURT: Are you aware of anything that could be helpful to you in this case that you have not talked with [trial counsel] about?
> [SAVALA]: No, Your Honor.
> THE COURT: Are you satisfied with the job that [trial counsel] has done for you?
> [SAVALA]: Yes, Your Honor.
> THE COURT: Do you believe he is a competent lawyer and knows what he's doing?

[SAVALA]: Yes, Your Honor.

THE COURT: Has he refused or neglected to do anything that you have asked of him?

[SAVALA]: No, Your Honor.

THE COURT: Have you had enough time to talk with [trial counsel] about this case?

[SAVALA]: I have, Your Honor.

THE COURT: Before we go any further, do you need anymore time to talk with him about anything?

[SAVALA]: No, Your Honor.

If Savala believed that he needed more time to consider the plea agreement, he had the opportunity to take that time at the plea hearing. Instead, he informed the court that he did not need any additional time and entered and maintained his plea of no contest throughout the hearing.

The record also shows that Savala understood that the court had total discretion in determining his sentence and that the court was not bound by any sentencing recommendations:

THE COURT: If I accept your plea and find you guilty, you will be found guilty of a Class II Felony. That Class II Felony does carry with it a possible penalty of one to 50 years imprisonment. Do you understand that?

[SAVALA]: I do, Your Honor.

THE COURT: Do you understand that I would not be required to grant you probation in this case?

[SAVALA]: Yes, Your Honor.

. . . .

THE COURT: Mr. Savala, I want you to understand that I am not bound by plea negotiations if they have anything to do with sentencing. That means that I don't have to accept any recommendations made by the State, made by your attorney, or made by anyone else as to what the sentence ought to be. Do you understand that?

[SAVALA]: I do, Your Honor.

. . . .

THE COURT: In exchange for your plea of no contest to the charge in Count I . . . have any promises been made to you other than what I have heard here in Court today?

[SAVALA]: No, Your Honor.

THE COURT: Has anyone made any promise to you or represented to you in any way what the actual sentence will be in this case if I accept your plea and find you guilty?

[SAVALA]: No, Your Honor.

THE COURT: Has anyone connected with law enforcement or anyone else made any threat, in any manner whatsoever, used any force, or held out any inducement or promise, other than this plea agreement, to get you to come in here and plead no contest to this charge?

[SAVALA]: No, Your Honor.

THE COURT: Are you pleading no contest freely and voluntarily?

[SAVALA]: Yes, Your Honor.

Savala affirmed that no other promises had been made to him outside of the terms of the plea agreement. If his trial counsel had made suggestions or promises concerning the type and length of sentence Savala was going to receive, Savala had numerous opportunities to inform the court of such conduct. Savala declined to do so, and instead, he told the court that no such promises had been made to him or induced his plea of no contest. This claim of ineffective assistance of counsel is without merit.

(b) Failure to File Motion to Suppress

Savala claims that his trial counsel was ineffective in failing to abide by Savala's request to file a motion to suppress and proceed to trial. However, Savala does not identify what evidence he believes would have or should have been suppressed. As stated above, an ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024).

The Nebraska Supreme Court has held that when an appellant claims his or her trial counsel was ineffective for failing to file a motion but fails to explain with sufficient particularity the subject of the motion or why there would have been grounds for filing the motion, the appellant fails to sufficiently allege deficient performance. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). Counsel is not deficient for failing to file a meritless motion, and appellate courts will not search the record to determine the possible grounds for pretrial motions an appellant on direct appeal asserts trial counsel was deficient in failing to make. *Id.* Furthermore, without specifying the statements and evidence appellant believes trial counsel should have sought to suppress, a postconviction court will be unable to identify whether the same claim was brought before the appellate court. *Id.* Allegations on direct appeal of ineffective assistance of trial counsel for failing to make a motion under some broad category, such as a motion to suppress, without more detail as to the subject of and grounds for the motion, are, like claims for failing to investigate or call "witnesses," mere placeholders. *Id.*

Savala's claim fails to sufficiently allege deficient performance. Savala does not identify what the subject matter or the grounds for any motion to suppress should be. We do not know if the missing motion should have been related to the statements Savala made to officers, the evidence seized at his home, a combination of the two, or something else completely. Instead, Savala generally asserts that his trial counsel ignored his desire to file a motion to suppress because counsel presumed that Savala would have been convicted at trial. This allegation does not allege deficient performance with enough particularity to preserve this claim of ineffective assistance for further review.

Further, even if we were to find that this allegation was adequately stated, the record refutes this alleged failure of Savala's trial counsel. At the plea hearing, the court informed Savala that he had a right to challenge any evidence submitted against him:

> THE COURT: If you have made any statements, admissions, or confessions to law enforcement or any other public official about this case, you are entitled to a separate

hearing to have me determine whether such statement, admission, or confession was made by you freely, voluntarily, knowingly, and intelligently. If, at that hearing, I found that any one or more of those items was missing, then that statement, admission, or confession could not be used against you at the time of a trial. Do you understand that?

[SAVALA]: Yes, Your Honor.

THE COURT: If I accept your plea of no contest, you'll be waiving and giving up your right to have this type of hearing. Do you understand that?

[SAVALA]: Yes, Your Honor.

THE COURT: Law enforcement officers may have taken evidence from you. If they did, you have a right to a separate hearing to have me determine whether any evidence taken from you was lawfully taken from you. If, at that hearing, I found that there was evidence not lawfully taken from you, then that evidence could not be used against you at the time of a trial. Do you understand that?

[SAVALA]: Yes, Your Honor.

THE COURT: If I accept your plea of no contest, you'll be waiving and giving up your right to have this type of hearing as well. Do you understand that?

[SAVALA]: Yes, Your Honor.

The court informed Savala that by entering a plea of no contest, he was waiving the right to a suppression hearing. The court also informed Savala several times that by pleading no contest, he was waiving his right to trial. Being fully informed of these rights, Savala pled no contest and consequently waived his right to a suppression hearing and his right to trial.

Savala confirmed that he was waiving his rights freely and voluntarily. Savala also affirmed that his trial counsel had not refused to do anything he had asked, and this would include filing a motion to suppress. For all these reasons, this assignment is without merit.

### (c) Failure to Advise About Surrendering Bond

Savala alleges that his trial counsel failed to adequately advise him about surrendering bond in this case after Savala had been arrested and placed in custody on the later filed case, preventing him from receiving credit for 135 days spent in jail following that arrest. We find that the record is silent as to the communications made between Savala and his trial counsel regarding the surrendering of bond. Accordingly, we conclude that our record is insufficient to resolve the claim on direct appeal. This claim is preserved for postconviction review.

### VI. CONCLUSION

For the reasons stated herein, we affirm Savala's conviction and sentence. We find that the record is insufficient to resolve Savala's claim of ineffective assistance of counsel by failing to advise him about surrendering bond. As to the two other ineffective assistance of counsel claims, we find that they lack merit.

AFFIRMED.